9 F.3d 1555
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Eduardo ZAPATA-GALVEZ, Defendant-Appellant.
 No. 92-50457.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 4, 1993.
Decided Oct. 25, 1993.
 
 Before: SKOPIL, HALL, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Eduardo Zapata-Galvez (Zapata) appeals his conviction for possession with intent to distribute cocaine in violation of 21 U.S.C. § 841 and conspiracy to possess cocaine with the intent to distribute in violation of 21 U.S.C. § 846.
 
 
 3
 * Zapata contends that the affidavit in support of the Claret Street warrant failed to establish probable cause because it relied exclusively on innocent activity.
 
 
 4
 "Probable cause exists when, considering the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " United States v. Ocampo, 937 F.2d 485, 490 (9th Cir.1991) (quoting United States v. Rodriguez, 869 F.2d 479, 484 (9th Cir.1989)). Otherwise "innocent" activity may carry special meaning to the experienced affiant and therefore the issuing judge may rely on this experience when making a probable cause determination. United States v. Del Vizo, 918 F.2d 821, 827 (9th Cir.1990).
 
 
 5
 The affidavit detailed activities indicative of drug trafficking such as counter-surveillance driving, see United States v. Mejia, 953 F.2d 461, 465 (9th Cir.1991) (taken in context, evasive driving supports overall determination that defendant engaged in drug trafficking), cert. denied, 112 S.Ct. 1983 (1992); a car switch, see Ocampo, 937 F.2d at 490 (suspicious activity in affidavit included a car switch); use of a vehicle that appeared to be riding low and later appeared to be riding higher; use of public pay telephones, see Del Vizo, 918 F.2d at 826 (use of public telephones may be taken into account in evaluating probable cause); use of a vehicle registered to a post office box, see Mejia, 953 F.2d at 464 (noting vehicle's registration to post office box); and the transfer of cardboard boxes. The totality of circumstances created probable cause.
 
 
 6
 Zapata contends that the decision in United States v. Ramos, 923 F.2d 1346 (9th Cir.1991), supports his position that these observations do not create probable cause. In Ramos, the court found that probable cause did not exist to issue a warrant to search an apartment and storage area because the affidavit did not show a nexus between the criminal activity and the places to be searched. Id. at 1353. Although the affidavit recounted conduct typical of narcotics traffickers, the court noted that the affidavit contained no evidence connecting the apartment to the items sought.
 
 
 7
 There are no allegations of anything being transported between the van and the apartment, or indeed that anybody from the van even entered the apartment.... There is no mention of cargo being loaded into, or observed within, the van at any point during [defendant's] stewardship of the vehicle, or that the van was driven any differently after it left the [apartment] than it had been driven before....
 
 
 8
 Id. at 1352. Unlike the affidavit in Ramos, the affidavit supporting the Claret Street warrant contained this type of evidence.
 
 
 9
 Zapata also relies on United States v. Del Vizo, 918 F.2d 821 (9th Cir.1990). Although the court in that case affirmed the district court's probable cause finding, it nonetheless concluded "the question [was] a close one." Id. at 827. Zapata considers it significant that the police surveillance in Del Vizo began with a tip from a confidential informant whereas there is no evidence that the officers in this instance received a tip. Moreover, Zapata contends that the activity observed in this case is less extensive than that in Del Vizo.
 
 
 10
 Zapata places too much reliance on the tip. "Of course, a confidential informant's tip ... figures into the determination of whether probable cause existed," Del Vizo, 918 F.2d at 826, but the decision in Del Vizo did not turn on the presence of a tip. The levels of activity in Del Vizo and in this case are comparable.
 
 
 11
 The issuing judge's determination that the affidavit created probable cause is not clearly erroneous. Moreover, even if the affidavit failed to establish probable cause, the "good faith" exception for a search conducted under the authority of a facially valid search warrant shields the officers' actions. See Ramos, 923 F.2d at 1354-55.
 
 II
 
 12
 Zapata contends the district court abused its discretion in not allowing his daughters to testify.[1] "The appropriate sanction for violation of a witness exclusionary rule is a matter which lies within the sound discretion of the trial court. Disqualification of a witness on that ground, while not the preferred remedy, has been held, in some circumstances, not to constitute an abuse of discretion." United States v. Avila-Macias, 577 F.2d 1384, 1389 (9th Cir.1978) (citations omitted).
 
 
 13
 Zapata knew of the exclusion order, knew his daughters were in the courtroom and should have known their testimony may be required. See Avila-Macias, 577 F.2d at 1389 (counsel's knowledge of witness's presence in court factors into decision). During direct examination, Zapata discussed his motives for moving to California. It is not unforeseeable that an issue raised on direct would be pursued during cross-examination.
 
 
 14
 Furthermore, the trial court found that the testimony of each daughter would be cumulative and that Zapata could introduce some of the evidence through his own testimony. The trial court's decision was not an abuse of discretion.
 
 III
 
 15
 Zapata also challenges the instructions given by the trial court. The instruction on reasonable doubt given by the trial court adequately set forth Zapata's theory of the case. Moreover, the trial court's instruction on reasonable doubt complies with the requirements of this circuit. See United States v. Jaramillo-Suarez, 950 F.2d 1378, 1386 (9th Cir.1991) (reiterating preference for "hesitate to act" language in reasonable doubt instruction). The trial court did not commit reversible error.
 
 IV
 
 16
 Zapata asserts that the district court abused its discretion by allowing into evidence hearsay statements regarding the surveillance of Zapata's codefendant. Prior to trial, Zapata withdrew his objection to these statements. The admission of this evidence, even if in error, does not constitute plain error. See United States v. Wood, 943 F.2d 1048, 1054 (9th Cir.1991) (absent objection, issue is not preserved for appeal and therefore decision is reviewed for plain error).
 
 V
 
 17
 Zapata contends that a reasonable jury could not find that he had constructive possession of the cocaine. He did not renew his motion for acquittal at the close of the trial and therefore the plain error standard applies. United States v. Mora, 876 F.2d 76, 77 (9th Cir.1989).
 
 
 18
 Zapata was the only person seen consistently at the Claret Street residence through the period of surveillance. He was present when the pick-up was backed into the garage and when officers heard sounds consistent with items being unloaded from the pick-up. Zapata had keys to the residence and the opener for its garage. See United States v. Medrano, 1993 WL 376160 * 3 (9th Cir. Sept. 27, 1993) (dominion and control arises when defendant receives keys to place where contraband is located); Ocampo, 937 F.2d at 489 (suggesting possession of keys to truck indicates possession of contents).
 
 
 19
 The cocaine found in the Claret Street residence was valued at $60 million. See United States v. Sanchez-Lopez, 879 F.2d 541, 555 (9th Cir.1989) (price, quantity and quality of cocaine relevant to establishing knowledge of presence and intent to distribute). Zapata testified that he was watching the Claret Street residence for a friend and that the room containing the cocaine was locked. He claims that his friend told him the door was locked because the room contained valuable artwork. The officers contend the door opened with a light push. "[A] less than credible explanation given by the defendant concerning his proximity to the contraband" may be considered as evidence of possession. United States v. Grayson, 597 F.2d 1225, 1229 (9th Cir.), cert. denied, 444 U.S. 873 (1979). The jury's verdict was not a manifest miscarriage of justice.
 
 VI
 
 20
 For these reasons, the judgment of the district court is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 At oral argument, Zapata broadened his allegation of error, claiming the during closing argument at trial, the Assistant United States Attorney inferred that Zapata had not tried to call his daughters. This argument is wholly without merit